<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                               :
JOSE RAUL SOSA, JR.,           :
                               :   Civil Action No. 14-1839 (RMB)
            Plaintiff,         :
                               :
      v.                       :          OPINION
                               :
POLICE OFFICER WHEELER, et al.,:
                               :
            Defendants.        :
_____:
```

**BUMB, District Judge:**

    On March 25, 2014, the Clerk docketed a handwritten letter, a handwritten civil complaint, a typed attachment to the complaint and an application to proceed <u>in forma pauperis</u>: that package gave rise to the instant matter.  <u>See</u> Docket Entry No. 1.

    The letter read, in relevant part, as follows:

> Enclosed herein you will find two . . . Plaintiff's prisoner['s] civil rights claim[s] under 42 U.S.C. Section 1983.  In addition[,] I have attached an application to proceed with[]out payment of the required 350.00 dollars fee . . . .  Please process both applications for each sep[a]rate law suit, one for police brutality and the other for medical malpractice against the physician who operated on me and the hospital who employed the physician.

Docket Entry No. 1, at 1.  The letter was signed "Jose Raul Sosa, Jr." ("Sosa" or "Plaintiff").[1]  <u>Id.</u>

---

    [1] The record of the New Jersey Department of Corrections shows that Sosa is a convicted prisoner serving four concurrent terms of imprisonments, two of which were imposed for unlawful taking of means of conveyance (such as "motor vehicles, bicycles,

The handwriting used in the letter markedly differed from that used in the accompanying civil complaint, which named, as Defendants, a certain "Police Officer Wheeler," "Camden Police Dep[artmen]t" and an "Unknown Police Officer," see id. at 2 and 5, and referred this Court's attention to the typed attachment for description of Sosa's factual allegations.  See id. at 5-6.

The attachment asserted the events of December 30, 2010, that gave rise to one of Sosa's robbery convictions.  See id. at 9-10.  The circumstances of that December 30, 2010, robbery were such that they allowed the police officers to: (a) identify Sosa as the perpetrator of the robbery committed on December 26, 2010; and (b) apprehend him in connection with both robberies.[2]

Allegedly, two officers, i.e., Officer Wheeler and his co-patrolmen, arrested Plaintiff, handcuffed him, carried him "30 or 40 feet and threw [him] over a fence . . . .  The fence was about 4 feet high [and] other officers [were] on the other side of the fence, waiting for [Sosa to be thrown over]."  Id. at 9.  The complaint also asserted that Officer Wheeler, his co-patrolmen

---

motorized bicycles, boats," see N.J. Stat. Ann. 2C:20-10d), one for a robbery and another for a robbery with a threat of bodily injury.  See https://www6.state.nj.us/DOC_Inmate/details?x=1219282&n=0.  One robbery offense was committed on December 26, 2010; the other was committed four days later, i.e., on December 30, 2010, about a month after the unlawful taking offenses.  See id.

[2]  During the December 30 arrest, the officers, seemingly, tried to locate the gun Sosa might have threatened to use in the preceding robbery of December 26.  See  Docket Entry No. 1, at 9 ("The officer told the others that he didn't[] find [the] gun").

2

and the officers "waiting on the other side of the fence" used racial slurs and severely beat Plaintiff even though he offered no resistance and was handcuffed. See id. Allegedly, later that night, Plaintiff was conducted and he was given "cra[]ches." Id. at 9-10. In addition, the jail provided Plaintiff with pain-reducing medication. See id. at 10.

With regard to this line of allegations, the complaint asked for "restitution for the injuries [Sosa] suffered and punitive damages for [his] mental suffering and constant fear of police officers," clarifying that he "wish[ed] for the Court to grant [him] $150,000.00 for injuries and . . . punitive damages [of] $3,000,000,000.00 [i.e., three billion dollars]." Id. at 7.

Although Sosa's cover letter unambiguously referred to *two* complaints and, equally unambiguously, indicated his preference for prosecuting *two* different suits, one with regard to the above-detailed allegations and another with regard to malpractice by a certain surgeon, no allegations as to the latter were included in the submission that gave rise to this action.

Yet, on the day when the Clerk's Office in this vicinage received Sosa's package, the Clerk's Office in the Trenton vicinage also received a package containing the same cover letter (in Sosa's handwriting) and a civil complaint executed in the handwriting identical to that used in the complaint at bar. See Sosa v. St. Francis Hospital (Sosa-II), Civil Action No. 14-1736

(FLW) (DNJ) (filed March 13, 2014). The Sosa-II complaint asserted that "Radiv K. Shah MD was the surgeon responsible for [Sosa's] operation to remove a hernia from [Sosa's] lower abdomen, however, [Sosa] ha[s] no idea what took place during [the] surgery] but [he believes that] the hernia still remains." Id., Docket Entry No. 1, at 4.[3] Therefore, it appears that Sosa's second intended suit referred-to in the cover letter is the Sosa-II action currently pending before Judge Freda L. Wolfson. Correspondingly, this Court finds it unwarranted to direct the Clerk to create yet another civil matter for Plaintiff's prosecution of his medical malpractice claims.

In light of Sosa's in forma pauperis application and absence of three disqualifying strikes, the Court will grant him in forma pauperis status and direct the Clerk to file the complaint.

Substantively, the complaint requires dismissal. Here, Sosa asserted Fourth Amendment excessive force claims in connection with the events that took place on December 30, 2010.[4]

---

[3] The Sosa-II complaint named, as Defendants, doctor Shah and St. Francis Hospital. See Sosa-II, Docket Entry No. 1, at 1. Therefore, the Sosa-II complaint fits the description of the second suit Plaintiff intended, as detailed in Sosa's cover letter.

[4] Sosa's complaint is dated as of December 8, 2013, see Docket Entry No. 1, at 8, i.e., more than three months prior to the Clerk's receipt of the same on March 13, 2014. However, since his in forma pauperis application was certified by the authorized officer on December 23, 2013, see Docket Entry No. 1-2, at 4, it is self-evident that Sosa could not have handed his package to his prison officials for mailing to this Court prior

Federal courts look to state law to determine the limitations period for § 1983 actions. See Wallace v. Kato, 549 U.S. 384, 387-88 (2007) ("Section 1983 provides a federal cause of action, but in several respects relevant here federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations"). A complaint under § 1983 is "characterized as a personal injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010) (citing Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989)).

In New Jersey, § 1983 claims are subject to New Jersey's *two-year* statute of limitations on personal injury actions. See N.J. Stat. Ann. § 2A:14-2. Under federal law, a § 1983 cause of action accrues when the allegedly wrongful act occurred. See Wallace, 549 U.S. at 388 ("It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief") (internal citations and alterations omitted).

While the statute of limitations is an affirmative defense that the defendants generally must plead and prove, see Bethel v.

---

to December 23, 2013. Therefore, the Court would presume, without making a factual finding to that effect, that Sosa triggered the prisoner's mailbox rule on December 23, 2013.

Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978), the Supreme Court observed that if the allegations of a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to [sua sponte] dismissal for failure to state a claim." Jones v. Bock, 549 U.S. 199, 215 (2007).

According to Plaintiff's allegations, his injuries occurred on December 30, 2010, and his claims accrued on that date since his complaint makes it abundantly clear that he was present at the time and had knowledge of his injuries as they occurred. Correspondingly, his two-year period of limitations was triggered on December 30, 2010, and expired in December 29, 2012, almost a year prior to the date when he obtained the authorized officer's certification of his in forma pauperis application.

While New Jersey statutes set forth certain bases for "statutory tolling," see, e.g., N.J. Stat. Ann. § 2A:14-21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A:14-22 (detailing tolling because of non-residency of persons liable), these bases are inapplicable to Sosa. See https://www6.state.nj.us/DOC_Inmate/details?x=1219282&n=0.

New Jersey law also permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from

6

asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defectively pleading or in a wrong forum. See Freeman v. State, 347 N.J. Super. 11 (N.J. Super. Ct. App. Div. 2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id.

Here, Plaintiff has been in the custody of the New Jersey Department of Corrections since March 4, 2011. See https://www6.state.nj.us/DOC_Inmate/details?x=1219282&n=0. Therefore, Officer Wheeler and his co-patrolmen lacked any opportunity to induce or trick Plaintiff into not commencing a legal action. In addition, the records of this and other federal courts indicate that Sosa did not commence any prior action based on the events of December 30, 2010, in a wrong forum. Analogously, he has not shown or even hinted at any extraordinary circumstances which prevented him from filing his complaint timely.[5]

---

[5] While it appears that English might not be Sosa's native language, the cover letter executed by Sosa is: (a) written with a better clarity and less grammatical errors that the complaint and the attachment executed for Plaintiff by some one else; and (b) verifies that Sosa was capable of stating the facts of his claims had he wished to do so timely. "[A] pro se complaint, however inartfully pleaded, [is always] held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). While this Court is mindful that the filing fee assessment would be a substantial burden for Sosa

Since the complaint at bar is facially untimely, and since Sosa cannot cure this deficiency by repleading, the complaint will be dismissed with prejudice.

An appropriate Order follows.

                                  s/Renée Marie Bumb
                                  **RENÉE MARIE BUMB**
                                  **United States District Judge**

Dated: April 16, 2014

---

(his prison account shows that his main source of income is limited to $20 monthly deposit monthly sent by a member of his family), this Court cannot avoid assessing the fee once the complaint is screened. See Izquierdo v. State, 2013 U.S. App. LEXIS 15533, at *2-3 and n.1 (3d Cir. July 25, 2013) (courts cannot avoid resolving the in forma pauperis issue simply because plaintiffs raise non-viable claims); Hairston v. Gronolsky, 348 F. App'x 716, 718 (3d Cir. Oct. 15, 2009) (the obligation to pay the filing fee is automatically incurred by the very act of raising a legal claim). However, the Court finds it warranted to remind Sosa that he is the sole master of all his suits. See Sanchez v. Doe, 2008 U.S. Dist. LEXIS 52092, at *25 (D.N.J. July 8, 2008) ("[T]his Court stresses . . . that (while [Plaintiff] may, if he so wishes, seek help from and/or consult with a licenced attorneys or discuss his case with unlicensed 'jailhouse lawyers,' . . . , for the purposes of this litigation, . . . it is [Plaintiff] – and [Plaintiff] alone – who is the master of his claims . . . . [F]acts rather than eloquence is all what is expected of him, and it will be [Plaintiff] – rather than some other person – who is affected by [the outcome of] this matter").